UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF SILVESTER, et al.,** | **CASE NO. 1:11-CV-2137 AWI SAB** |
| **Plaintiffs** | |
| v. | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **KAMALA HARRIS, Attorney General of California, and DOES 1 to 20,** | (Doc. No. 31) |
| **Defendants** | |

    This case challenges the constitutionality of several state firearms laws.  Plaintiffs allege that California Penal Code §§ 26815 and 27540, which impose a 10-day waiting period between the purchase and delivery of a firearm, violates the Second Amendment facially and as applied to individuals who:  (1) are not prohibited from acquiring or possessing firearms, and (2) who currently possess registered firearms and/or who hold certain valid state licenses that require the successful passage of background checks.  Plaintiffs also contend that eighteen exceptions to the 10-day waiting period violate the Fourteenth Amendment's Equal Protection Clause.  Defendant Attorney General of California Kamala Harris ("Harris") has moved for summary judgment on all claims.  For the reasons that follow, the motion will be denied.

# FACTUAL BACKGROUND[1]

At all relevant times, the Plaintiffs have each owned at least one firearm. See DUMF's 2, 3. At all relevant times, one effect of Penal Code §§ 26815 and 27540 ("the WPL")[2] has been that all California residents lawfully purchasing firearms must wait a minimum of 10 days between applying to purchase the firearms and receiving delivery of them, unless the purchasers are statutorily exempt from the waiting period. See DUMF 1.

# SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the

---

[1] "DUMF" refers to "Defendant's Undisputed Material Facts." Plaintiffs have submitted additional facts, and Harris has raised various objections to those facts. Because the motion can be resolved based on the three facts submitted by Harris, it is unnecessary for the Court to address Harris's objections or Plaintiffs' proposed facts.

[2] Penal Code §§ 26815(a) and 27540(a) prohibit the delivery of a firearm: "Within 10 days of the application to purchase, or after notice by the department pursuant to § 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to § 28225, whichever is later."

2

movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must be rational or reasonable. See Narayan, 616 F.3d at 899. If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

**DEFENDANT'S MOTION**

**1.     Second Amendment Challenge**

*Defendant's Argument*

Harris argues that Plaintiffs' Second Amendment challenge should be analyzed under the "substantial burden test" adopted by the Second Circuit. Under the "substantial burden test," heightened scrutiny is applied only to those laws that substantially burden the Second Amendment. See United States v. DeCastro, 682 F.3d 160, 164 (2d Cir. 2012). If a law does not substantially burden the Second Amendment, then the law need only pass "rational basis" scrutiny. See id. at 166-67. A law imposes a substantial burden if the law bans law-abiding

people from owning firearms or leaves them without adequate alternatives for acquiring firearms for self-defense. See id. at 168.

As applied to the WPL, that law does not substantially burden the Second Amendment. The WPL is a regulation on the commercial sale of firearms and is one of the "tools" available to California to address the problem of firearm violence. The law does not leave Plaintiffs in a position to be unable to acquire legal firearms. Plaintiffs have had many chances to obtain firearms, and could even borrow firearms if they wish. Further, the inconveniences cited by Plaintiffs are minimal and do not amount to a constitutional violation. Because the 10-day waiting period does not substantially burden the Second Amendment, rational basis review is appropriate.

Under rational basis review, the WPL easily passes muster. The WPL is rationally related to safety and reducing firearm violence. The WPL serves that objective in two ways. First, limiting a person's ability to acquire another firearm can only decrease the likelihood that the person will use a firearm in an act of violence. That is, the WPL creates a "cooling off" period to deal with those people who have an impulse to use a firearm to commit an act of violence. Second, the WPL allows law enforcement officials sufficient time to conduct background checks on prospective firearms purchasers, so that those who are prohibited by law from having firearms will not be able to acquire them. For those who have already purchased a firearm, it is possible that the individual may have become ineligible following the purchase of the first firearm.

Alternatively, even if rational basis review is not utilized, the WPL passes intermediate scrutiny. The Legislature reasonably could have supposed that mandating a 10-day cooling off period would dissuade at least some people experiencing violent impulses from acting out those impulses with firearms. If a person is dissuaded, then firearm violence would be reduced. Even if a person already has a firearm, limiting that person's ability to acquire another firearm can only decrease the likelihood that the person will use a firearm in an impulsive act of violence. Also, the Legislature reasonably could have supposed that giving law-enforcement 10 days to conduct a thorough background check on prospective purchasers would hamper some people who are not legally permitted to possess firearms. While background checks may not stop all persons from obtaining them, a "perfect fit" between the law and the objective to be served is not required. The

4

1  WPL is reasonably adapted to serve the important government interest in public safety.

2  *Plaintiffs' Opposition*

3  Plaintiffs argue that the two part inquiry adopted by the Seventh Circuit in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) should be utilized.  Under this framework, the WPL violates the Second Amendment both facially and as applied to Plaintiffs.  In 1791 and 1868, waiting period laws were not common.  Harris argues that the WPL imposes a minor burden, which at a minimum concedes that it is a burden and/or infringement on the right to keep and bear arms.  Every gun purchaser in California is deprived of the right to bear arms for at least 10 days, and is required to make additional trips to obtain the firearm.  There are no alternative means of legally exercising this fundamental right without going through these burdens.  No matter how great the need may be for a firearm for self-defense, there is no alternative but to wait at least 10 days.  Because the WPL burdens the Second Amendment, heightened scrutiny must be applied.

The WPL as applied against those who have previously purchased firearms or who possess certain state licenses is the equivalent of a prior restraint, and thus should be analyzed under strict scrutiny.  However, under either strict scrutiny or intermediate scrutiny, the WPL fails.  In terms of strict scrutiny, Harris has not shown that the law is effective either in reducing gun violence or in keeping firearms out of the hands of unqualified purchasers where the government has already issued that purchaser a License To Carry or a Certificate Of Eligibility.

In terms of intermediate scrutiny, neither of the bases argued by Harris is sufficient.  There is no indication that the WPL is necessary to weed out unqualified purchasers.  While it is appropriate to have a background check, the current systems and data available do not make the 10-day waiting period reasonable.  In terms of cooling-off, there is no evidence to support the efficacy of the law in preventing impulsive firearm violence.  Moreover, for those who already legally possess firearms, the WPL would have no effect in terms of creating a "cooling off" period.  Any spontaneous desire to perform a violent act can be manifested through the weapon that is already in the individual's possession.  Because the WPL fails intermediate and strict scrutiny, Harris's motion must be denied.

*Legal Standard*

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment right to keep and bear arms is an individual right and a fundamental right that is incorporated against states and municipalities under the Fourteenth Amendment. See McDonald v. City of Chicago, 130 S.Ct. 3020, 3042 (2010); District of Columbia v. Heller, 554 U.S. 570, 595 (2008); Nordyke v. King, 681 F.3d 1041, 1043 (9th Cir. 2012) (en banc). The Second Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." McDonald, 130 S.Ct. at 3044; see also Heller, 554 U.S. at 630. However, the Second Amendment's protection is not unlimited, and longstanding regulatory measures such as "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," are presumptively lawful. McDonald, 130 S.Ct. at 3047; Heller, 554 U.S. at 626-27; Chovan, 2013 U.S. App. LEXIS 23199 at *13.

The Ninth Circuit has adopted a two-step Second Amendment framework: (1) the court asks whether the challenged law burdens conduct protected by the Second Amendment, and (2) if so, the court determines whether the law meet the appropriate level of scrutiny. See United States v. Chovan, - - - F.3d - - -, 2013 U.S. App. LEXIS 23199, *22, *25-*26 (9th Cir. 2013); see also National Rifle Ass'n of Am. v. Bureau of Alochol, Tobacco, Firearms and Explosives, 700 F.3d 185, 194-95 (5th Cir. 2012) ("N.R.A."); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010). The first step is a historical inquiry that seeks to determine whether the conduct at issue was understood to be within the scope of the right to keep and bear arms at the time of ratification. Chester, 628 F.3d at 680; see Chovan, 2013 U.S. App. LEXIS at *23-*25; N.R.A., 700 F.3d at 194; Ezell v. City of Chicago, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct that falls outside of the Second Amendment's scope, then the analysis ends and there is no violation. See N.R.A., 700 F.3d at 195; Ezell, 651 F.3d at 703. As to the second step, rational basis review is not to be used. Heller, 554 U.S. at 628 n.27; Chovan, 2013 U.S. App. LEXIS 23199 at *25-*26.

Instead, if a law burdens a right within the scope of the Second Amendment, either intermediate or strict scrutiny will be applied. See Chovan, 2013 U.S. App. LEXIS 23199 at *25-*29; N.R.A., 700 F.3d at 195; Chester, 628 F.3d at 682. Whether intermediate or strict scrutiny applies depends on: (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right. Chovan, 2013 U.S. App. LEXIS 23199 at *26; N.R.A., 700 F.3d at 195; Ezell, 651 F.3d at 703. A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny. See N.R.A., 700 F.3d at 195; Chester, 628 F.3d at 682. The "intermediate scrutiny" standard requires: (1) that the government's stated objective must be significant, substantial, or important, and (2) that there is a reasonable fit between the challenged regulation and the government's asserted objective. Chovan, 2013 U.S. App. LEXIS 23199 at *29-*30; N.R.A., 700 F.3d at 195; Chester, 628 F.3d at 683. For there to be a "reasonable fit," the regulation must not be substantially broader than necessary to achieve the government's interest. See Reed v. Town of Gilbert, 707 F.3d 1057, 1074 n.16 (9th Cir. 2013); Fantasyland Video, Inc. v. County of San Diego, 505 F.3d 996, 1004 (9th Cir. 2007); United States v. Marzzarella, 614 F.3d 85, 98 (3d Cir. 2010).

*Discussion*

As an initial matter, the Court must reject Harris's request that it adopt the Second Circuit framework for analyzing Second Amendment challenges. *Chovan*, which was filed after Harris filed her motion, adopted the majority approach, as reflected in cases such as *Chester* and *Ezell*. Accordingly, *DeCastro* has no application to this case.

Under the *Chovan* framework, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment. The WPL prohibits every person who purchases a firearm from taking possession of that firearm for a minimum of 10 days. That is, there is a period of at least 10 days in which California prohibits every person from exercising the right to keep and bear a firearm. There can be no question that actual possession of a firearm is a necessary prerequisite to exercising the right keep and bear arms. Further, there has been no showing that the Second Amendment, as historically understood, did not apply for a period of time

7

between the purchase/attempted purchase of a firearm and possession of the firearm.[3] Cf. Chovan, 2013 U.S. App. LEXIS 23199 at *25 (". . . we are certainly not able to say that the Second Amendment, as historically understood, did not apply to persons convicted of domestic violence misdemeanors."). Although Harris argues that the WPL is a minor burden on the Second Amendment, Plaintiffs are correct that this is a tacit acknowledgment that a protected Second Amendment right is burdened. Therefore, the Court concludes that the WPL burdens the Second Amendment right to keep and bear arms.

The next step is to analyze the WPL under either strict or intermediate scrutiny. As indicated above, Harris advances two rationales in defense of the WPL – it provides a "cooling off period" for those who may have an impulse to commit violence and it provides time for California to conduct a background check. It is unnecessary for the Court to determine at this time which scrutiny to apply because, even under the lesser "intermediate scrutiny," summary judgment is not appropriate.

With respect to the rationale of providing time to perform a background check, *Heller* indicated that some laws or regulations presumptively do not offend the Second Amendment, including laws that prevent felons and mentally ill persons from possessing firearms. See Heller, 554 U.S. at 626-27. If a state presumptively can constitutionally prohibit certain categories of persons from possessing firearms, then it would seem to follow that a state can also perform some type of "background check" in order to ensure that a disqualified person is not attempting to obtain a firearm. Indeed, Plaintiffs do not argue that background checks are constitutionally improper, nor do they argue that California should not perform background checks. What Plaintiffs essentially argue is that the 10-day period is arbitrary and/or substantially overbroad, and that an adequate background check can be performed in a significantly shorter period of time. Although Harris has made arguments that support a waiting period in general, Harris has presented insufficient evidence to justify the actual 10-day period. For example, there is no evidence regarding the nature of the background checks performed, how much time is necessary to perform

---

[3] The Court notes that Harris has not refuted Plaintiffs' assertion that waiting periods of any duration before taking possession of a firearm were uncommon in both 1791 and 1868. Cf. Ezell, 651 F.3d at 702-03; Chester, 628 F.3d at 680.

8

a background check, or why 10-days are necessary in order to perform a background check.[4] Harris admits that in the past California has had waiting periods that have ranged from 1 to 15 days. However, there is nothing before the Court to suggest that the 10-day period is a "reasonable fit" that is not substantially broader than necessary to determine if an individual is disqualified from owning a firearm. More information is needed. The Court will not grant summary judgment on this issue based on the bare arguments presented. Chester, 628 F.3d at 883.

As for the "cooling down" rationale, Harris has not presented sufficient evidence that the 10-day waiting period is a "reasonable fit." For example, there is no evidence concerning how the 10-day period was determined for purposes of "cooling off," any evidence concerning "cooling off" and gun violence in general for those wishing to purchase a firearm, or that the 10-days is not substantially broader than necessary.[5] Additionally, as applied to individuals who already own a gun, the Court has great difficulty envisioning how the "cooling off" rationale could pass the appropriate level of scrutiny. If an individual already possess a firearm, then nothing about this rationale would prevent that individual from acting on a sudden impulse to commit gun violence with the gun already in his or her possession. The Court will not grant summary judgment on this issue based on the bare arguments presented. Chester, 628 F.3d at 883.

**2.      Fourteenth Amendment Equal Protection Challenge**

*Defendant's Argument*

Harris argues that each of the exceptions to the WPL that Plaintiffs challenge survive equal protection analysis. The WPL passes both rational basis and intermediate scrutiny, thus the WPL does not burden a fundamental right. Because the WPL does not burden a fundamental right, the 18 exceptions challenged by Plaintiffs need only pass rational basis review. Those 18 exceptions cover transactions involving police officers, firearms dealers delivering non-handguns to auctions and similar events, dealer to dealer transactions (including dealer to himself), importer and

---

[4] This list is by way of example only and is not meant to be conclusive as to the types of arguments or evidence that can be presented.

[5] This list is by way of example only and is not meant to be conclusive as to the types of arguments or evidence that can be presented.

9

1  manufacturer transactions, individuals with permits for unusual weapons, repairs by gunsmiths,
2  dealer sales to out of state residents, firearm deliveries to wholesalers, and loans of firearms for
3  certain activities/facilities. For each of these groups, the Legislature could have rationally
4  concluded that the nature of the transaction, or the licenses already possessed or the nature of the
5  activities involved, sufficiently guarded against the threat that the firearm would be used for illegal
6  violence.  Accordingly, none of the challenged laws violate the Equal Protection Clause.

*Plaintiffs' Opposition*

Plaintiffs argue that there are 18 groups excepted from the WPL, including peace officers, firearms dealers delivering non-handguns to auctions, certain dealer-to-dealer transfers, transfers to people with permits for "exotic" firearms/weapons, transfers to repair or service firearms, dealer sales out of state, firearm deliveries to wholesalers, and regulated lending of firearms at certain facilities (e.g. firing ranges).  Although Harris tries to explain a rational basis for these exceptions, she assumes that the laws do not infringe on a fundamental right.  However, the WPL does infringe on a fundamental Second Amendment right, so heightened scrutiny applies.  Since Harris does not defend these laws under the proper level of scrutiny, summary judgment is inappropriate.

*Legal Standard*

"The Equal Protection Clause commands that no state shall deny any person the equal protection of the laws." Stop H-3 Ass'n v. Dole, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989).  The Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  "[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." Barnes-Wallace v. City of San Diego, 704 F.3d 1067, 1084 (9th Cir. 2013). "When a statute burdens a fundamental right or targets a suspect class, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause." Silveira v. Lockyer, 312 F.3d 1052, 1087 (9th Cir. 2002).[6]  Statutes that infringe on fundamental rights are subject to strict scrutiny review, which means that a regulation will be upheld only if it is suitably tailored to serve a compelling state interest. Id. at 1087.

---

[6] Abrogated on other grounds as recognized by Barnes-Wallace, 704 F.3d at 1084-85.

10

*Discussion*

Harris's arguments are based on the proposition that the 18 classifications pass rational basis scrutiny. When a fundamental right is burdened, rational basis scrutiny does not apply. See Nordlinger, 505 U.S. at 10; Silveira, 312 F.3d at 1087. Contrary to Harris's argument, Harris has not established that the WPL does not burden the Second Amendment right to keep and bear arms. As explained above, Harris did not show that the WPL passes either intermediate or strict scrutiny. Because Harris's arguments do not show that rational basis review is appropriate, Harris has not adequately met her initial burden. Summary judgment on the Equal Protection claims is inappropriate. See Nissan Fire, 210 F.3d at 1105-06.

**CONCLUSION**

Harris moves for summary judgment on each of the claims alleged by Plaintiffs. With respect to the Second Amendment claims, Harris has not sufficiently met her burden. Harris has not presented sufficient evidence to show that the WPL passes either intermediate or strict scrutiny for either the "background check" rationale or the "cooling off period" rationale. With respect to the Equal Protection claims, Harris has focused exclusively on rational basis scrutiny. However, Harris has not adequately demonstrated that rational basis scrutiny is appropriate. Therefore, Harris's motion for summary judgment will be denied in its entirety.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: December 6, 2013 _____
SENIOR DISTRICT JUDGE